# Exhibit A

**CARDINAL HEALTH**
**SUPPLIER AGREEMENT**

This Cardinal Health Supplier Agreement ("Agreement") is made as of 1/16/15 (the "Effective Date"), between Xspire Pharma ("Supplier") and certain direct and indirect subsidiaries of Cardinal Health, Inc. purchasing generic pharmaceuticals from Supplier ("Cardinal Health"). As of the Effective Date, Supplier and Cardinal Health hereby agree as follows:

1. **Amendment to GWSA and Transition.**

a. **Amendment of Definition of "Product."** The definition of "Product" in the Generic Wholesale Service Agreement between Cardinal Health and Supplier ("GWSA") is amended to mean the following: "only those generic pharmaceutical products manufactured and/or marketed by Supplier which are received and sold by Cardinal Health under Vendor number 10461." To be clear, Cardinal Health (and not Red Oak Sourcing, LLC) will directly manage those Products which remain under the vendor number described above and all terms associated with such Products. The chargeback policy attached on Exhibit 1 will govern the administration of all chargebacks under the GWSA.

b. **Transition Matters.** In connection with the amendment of the GWSA as set forth in this Section, the parties desire to settle certain matters as set forth in this Section 1.b. For purposes of this section 1.b. only, terms not otherwise defined in this Agreement shall have the meaning set forth in the GWSA.

(i) **Milestone Based Incentives.** The GWSA may provide for a variable volume or duration based rebates or service fees on certain product purchases. As of the Effective Date, any volume or duration based incentives in the GWSA will terminate. Supplier agrees to pay to Cardinal Health a pro-rated portion of each volume or duration based incentive, the amount of which shall be determined as follows: Cardinal Health will (i) determine the applicable volume of product purchased and/or sold (depending on whether the incentive is purchase based or sales based) through the Effective Date, (ii) annualize those volumes to determine the rebate/service fee rate that Cardinal Health would be eligible to receive if the incentive were applied for the full contract year (in the case of volume based incentives) or duration period (in the case of duration incentives) assuming the same utilization rates, and (iii) provide an invoice to Supplier for the applicable rebate percentage rebate rate applied to all purchases and/or sales (depending on whether the incentive is purchase based or sales based) through the Effective Date. Supplier will pay any invoice within thirty (30) days.

2. **Additional Terms Applicable to Product Sourced by Red Oak.** In addition to the Red Oak Sourcing, LLC Generic Pharmaceuticals Business Standards, the following terms apply:

a. **Non-Contract and Indirect Contract Services and Service Fees**

(i) **Services.** Cardinal Health shall provide the following services in support of non-contract sales and contracts between Supplier and customers of Cardinal Health which establish prices at which such customers may purchase certain of Supplier's Products ("Indirect Contracts") and for non-contract sales: (a) storage, handling and distribution of generic Products manufactured and/or marketed by Supplier, (b) sophisticated ordering technology by which Supplier's Indirect Contract customers order Supplier's products from Cardinal Health, (c) daily consolidated deliveries to customers, (d) emergency shipments to customers 24/7/365, (e) consolidated accounts receivable management, (f) indirect contract chargeback administration, (g) returns processing, (h) customer service support to customers, (i) licensed, environmentally controlled, PDMA compliant, secure facilities, (j) pedigree handling where required by law, (k) other miscellaneous wholesaling and distribution services ("Indirect Contract Services").

(ii) **Service Fee.** Supplier agrees to pay Cardinal Health a fee for the Indirect Contract Services (which includes services rendered in support of non-contract sales) equal to [10%] of Net Sales of Products sold under an Indirect Contract and for non-contract sales ("Indirect Contract Service Fee"). "Net Sales" means the total number of net units of Product sold by Cardinal Health under an Indirect Contract multiplied by the Indirect Contract cost at the time of each sale. The total number of net units will include all units sold by Cardinal Health less units returned from Cardinal Health's customers, provided however that 3rd party returns will not be deducted from Net Sales. The "time of each sale" means the date on which the Product is shipped from Cardinal Health to the customer.

(iii) **Stocking Allowance.** Thirty (30) days following the addition of (i) any Product into a Cardinal Health distribution center that did not previously stock such Product, and (ii) any Product into a new Cardinal Health distribution center, Cardinal Health will invoice Supplier for an amount equal to 5% of the total Indirect Contract and non-contract sales during the thirty (30) day period, measured at Invoice Price.

b. **Preferred Program Rebate.** Supplier agrees to provide Cardinal Health a rebate equal to [20%] of the Net Sales of products sold by Cardinal Health through Preferred Programs. The term "Preferred Programs" means any and all generic sourcing (or similar) programs developed by Cardinal Health to promote generic products from time to time (including SOURCE℠, similar or successor programs). The term "Net Sales" means the total number of net units of product sold by Cardinal Health multiplied by the contract cost at the time of each sale. The total number of net units will include all units sold by Cardinal Health less units returned from Cardinal Health's customers (excluding 3rd party returns). The "time of each sale" means the date on which the Product is shipped from Cardinal Health to the customer.

c. **Chargeback Administration Services.** The Chargeback Policy attached to this Agreement as Exhibit 1 (as amended, if applicable) will govern the administration of all Supplier chargebacks. If a GWSA amendment is included in Exhibit 1, such GWSA amendment is included for the sole purpose of providing the amended chargeback policy terms and for no other purpose.

d. **Insurance.** Supplier shall obtain and maintain Products and Completed Operations Liability insurance with a per occurrence limit of not less than five million dollars ($5,000,000). Red Oak Sourcing, LLC and Cardinal Health, Inc. & its subsidiaries and affiliates shall be named as

additional insureds under the required policy. Supplier's insurance shall be primary and non-contributory over any insurance or self-insurance program maintained by Red Oak Sourcing, LLC or Cardinal Health, Inc. Supplier will provide a Certificate of Insurance or other evidence of insurance coverage evidencing the insurance required in this Agreement and the additional insured status.

e. Supplier agrees that the terms and conditions of this Agreement, as well as information related to Cardinal Health's contract costs, net acquisition costs, Preferred Program participants, customers, non-source rebates and similar information are the confidential information of Cardinal Health. Supplier agrees that it will not disclose such information to any third parties and that it will only use such information for the purpose of performing its obligations under this Agreement.

| RED OAK SOURCING, LLC, as agent For Cardinal Health | SUPPLIER |
|---|---|
| [signature] | [signature] |
| Signature | Signature |
| Robert Spina | Ford Mundy |
| Printed Name | Printed Name |
| Vice President, Rx Sourcing | President & CEO |
| Title | Title |
| 1/9/15 | 12.16.14 |
| Date | Date |